UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

| | | |
|---|---|---|
| MICHAEL E. LAUVER *aka* | : | Case No. 05-20015T |
| MICHAEL EUGENE LAUVER | | |
| TASHA T. LAUVER *aka* | : | |
| TASHA TROY LAUVER *aka* | | |
| TASHA BRYSON, | : | |
|     *Debtor(s)* | | |
| | : | |

## **ORDER**

AND NOW, this 23rd day of June, 2005, it is ORDERED that Debtors' Motion for Redemption of a 2000 Ford Ranger, Vehicle Identification Number 1FTZR15XXYTA454658 ("the Vehicle"), is GRANTED IN PART and DENIED IN PART, as follows:

*(1)* Debtors' Motion is GRANTED to the extent that it seeks permission from this Court to authorize the redemption of the Vehicle by Debtors; and

*(2)* Debtors' Motion is DENIED to the extent that it seeks an Order valuing the Vehicle at $8250.00 as the court finds that the fair market value of the Vehicle is $10,500.00.[1]

---

1. We agree with Respondent, Citadel Federal Credit Union ("Citadel"), that the value of the Vehicle is the replacement value, which is defined as "the price a willing buyer in the debtor's trade, business or situation would pay to obtain like property from a willing seller," Associates Commercial Corp. v. Rash, 520 U.S. 953, 960 (1997); see also In re King, No. 01-37214DWS, 2003 WL 22110779 *4 (Bankr. E.D. Pa. Sept. 2, 2003). We also agree with our colleague, Chief Judge Diane W. Sigmund, who stated that:

> [t]o determine replacement value, I must ask what price a buyer in Debtor's position would pay. (footnote deleted). A buyer in the Debtor's position would not be able to secure a wholesale price for the vehicle. (citation omitted). Rather that is generally the price a dealer would pay a consumer for a trade in on her vehicle which is not the situation here. Rather she would pay either retail value or some lesser price if she bought it from a private party.... Either option would be available to a party in Debtor's

Reading, PA

          THOMAS M. TWARDOWSKI
          United States Bankruptcy Judge

> position, and therefore I conclude that the appropriate value is something slightly less than retail to account for the availability of the private sale option.

King, 2003 WL 22110779 at *5.

      We next turn to the evidence before us and note that the parties have provided us with two assessments of the fair market retail value of the Vehicle, as follows. Exhibit R-1, which is titled "Vehicle Summary with NADA Values" was faxed to counsel for Citadel by counsel for Debtor. Exhibit R-1 lists the retail value of the Vehicle at $11,325.00. Exhibit R-2, which is titled "NADA Vehicle Pricing & Information" lists the retail value of the Vehicle at $11,850. The differences in the two retail values is explained by the fact that Exhibit R-1 values the Vehicle with fewer options than the valuation shown on Exhibit R-2. As the options listed on Exhibit R-2 most accurately reflect the options which are actually contained on the Vehicle, and as we find the testimony proffered by Citadel's witness to be extremely credible, we accept the retail value listed on Exhibit R-2 as the most accurate assessment of the retail value of the Vehicle. However, we also note that Debtor, Tasha Lauver, testified that the Vehicle is in good condition, with no dents, but with some scratches in the bed of the truck and with some holes in the driver's seat. Taking into account these minor deficiencies as well as the fact that the Vehicle's odometer registers approximately 55,000 miles, and after making an adjustment for the possibility that Debtors could purchase a vehicle from a private party, we find as a fact that the fair market value of the Vehicle is $10,500.00.